## ENNIS v. HULTZ ET AL.

1. **Contract:** ATTORNEY'S FEES.    Where an attorney, who had undertaken to prosecute a case under a contract fixing his fees therefor, after rendering certain services transferred the management of the case to another attorney, whom he represented to his client that he had simply associated with himself in the case, *held*, that the attorney to whom the case was transferred was bound by the contract in the absence of knowledge and assent by the client to its termination.

### *Appeal from Wapello Circuit Court.*

WEDNESDAY, JUNE 6.

THE plaintiff, an attorney-at-law, claims $350 on account of professional services rendered for defendants.    The facts found by the court are as follows: "On or about the — day of ——, 1869, Hon. J. W. Dixon was engaged in the practice of the law at Ottumwa, Iowa, and the defendants in this case having a tract of land near the city, the title to which was in dispute, called upon him and employed him to prosecute the case; and

he agreed to prosecute the same to a final judgment, and if successful he was to receive as his compensation the sum of one hundred and fifty dollars, and if unsuccessful, nothing; and sometime after he took into partnership with him the plaintiff, John B. Ennis, a former student, and they continued in partnership from about the —— day of ————, 1870, to the 1st of September, 1871, when they dissolved partnership, but remained in the same office until about the 15th day of November, 1872, when the said Dixon removed across the street and to another building. When they entered into partnership it was agreed between them that Dixon should retain and prosecute his old cases to a final termination on his own account, and this plaintiff, under that agreement, had no interest in the case in question. The said Dixon and Ennis caused a sign to be placed at their office as a firm, and this sign has continued at the office during the co-partnership and has never been removed. The defendants, by their agent, A. J. Davis, with whom the contract was made, were advised and had knowledge of the partnership, but none of the conditions thereof, and had no information other than would be inferred from the fact of the co-partnership, and while he was in the office the plaintiff herein manifested some interest in the case when the said Davis was consulting Dixon in relation to the case, but was not in it, and the defendants were not advised that he was during its continuance. The said Dixon, in the meantime, had commenced the suit, filed the petition and taken part of the testimony; but little of the real labor of the case had been done during this time, and up to the time plaintiff was called into the case.

"Mr. Dixon, not being inclined to follow the law for a living, turned the case aforesaid over to the plaintiff sometime in December, 1871, and about March 12, 1872, advised the said A. J. Davis, the agent of the defendants in this case, that he had taken plaintiff into the case with him, but did not advise plaintiff of the contract as to the amount of fees which he was to receive in the case, and he denies, as a witness, that such was the contract; but it is the opinion of the court that the contract is so established by the weight of evidence in the

case, although this fact is not established beyond a question or a doubt.

"The said Ennis from the time he took hold of the case managed the case entirely himself, prosecuted it to judgment in the Circuit Court and presented the case to the Supreme Court; and it is conceded by the defendants' counsel, and the court so finds, that the evidence shows the reasonable value of the services rendered by him to be the sum of three hundred and fifty dollars; and he had no knowledge whatever as to the contract touching the amount of the fees which the said Dixon had agreed to prosecute the case for to final judgment. The said Dixon and Ennis, after the dissolution of the partnership, prosecuted together some cases commenced by them while the partnership was in existence. The court further finds that the defendants did not have actual notice of the dissolution of the co-partnership until after the 15th day of November, 1872, when the said Dixon removed his office. The court holds, following the case of *McCrary v. Ruddick*, that the defendants are liable for the reasonable value of the services as aforesaid."

Judgment was accordingly rendered for plaintiff for $350. The defendants excepted and appeal.

*Chambers & McElroy*, for appellants.

*Stiles & Burton* and *J. B. Ennis*, for appellee.

ADAMS, J.—A lawyer makes a contract with his client to prosecute his case for $150. After doing a portion of the

1. CONTRACT: attorney's fees.

work he retires from the practice and turns the case over (or attempts to do so) to a former partner, who prosecutes it to final judgment and charges $350 and is allowed to recover it. If the client knew that the case was thus turned over, there might be some reason for so holding. But in the absence of such knowledge we are clear that the special contract could not be considered as waived. What, then, is the fact in this case in regard to such knowledge? The statement of facts set out as preliminary to the opinion is a literal copy from the findings of the Circuit Court. Taking

that statement as correct, it will be seen that the defendants had no knowledge that the case had been turned over to the plaintiff. Dixon advised Davis, the defendants' agent, that "he had taken the plaintiff into the case with him." This is quite a different thing from turning the case over to the plaintiff. Now, the defendants only knew what Dixon advised their agent. They did not even have reason to suppose that the case was turned over. If, indeed, the defendants had seen the plaintiff assuming the entire management of the case, they would even then had no reason to suppose that the case had been turned over to him, or, in other words, that Dixon was out of it. All that defendants could have seen was that plaintiff was doing all the work. That would have been consistent with the idea that Dixon still shared the responsibility, and was still in the case, as Dixon certainly represented to defendants that he was, when he advised their agent that "he had taken the plaintiff into the case with him." The plaintiff seems to attach importance to the idea that he is an innocent party. To this it may be said that he knew well that Dixon had no power to turn the case over to him without defendants' consent, and that Dixon never did turn the case over to him unless that consent was gained. The defendants did not employ Dixon to turn the case over to some one else. In so doing, he was not acting as their agent. If plaintiff undertook to take the case off of Dixon's hands, and employed Dixon to notify defendants and obtain their consent, in such notification Dixon was plaintiff's agent, and if he notified defendants that "he had taken plaintiff into the case with him" contrary to the fact, the plaintiff should suffer and not the defendants. This case, then, must be decided upon the ground that Dixon merely took the plaintiff into the case with him. That is all the defendants knew about it, and in the absence of evidence that defendants consented to the termination of Dixon's responsibility, that must be considered as the real fact. What, then, is the law where an attorney takes a case upon a special contract and afterwards associates an attorney with him? Or what is the law, in any case, where a person contracts to do a job of work for a certain sum and

afterwards associates a person with him? Can the person thus associated recover upon a *quantum meruit* against the employer of his employer? The question is easily answered. No implied contract of employment exists in such case, because the person thus associated works under an express contract with his immediate employer which excludes it.

The plaintiff in the case at bar cannot be allowed to say that the defendants looked on and saw him do work for them, and therefore impliedly agreed to pay him, because the plaintiff had an express contract with Dixon. Here, then, is the test, and it will enable us to distinguish this case from *McCrary v. Ruddick et al.*, 33 Iowa, 521, upon which plaintiff relies. That was a suit brought by McCrary to recover for professional services. He had defended the defendants in a former suit. One of them was an attorney by the name of Galland, who had made a special contract with his co-defendants to defend the suit and employ assistant counsel. He employed McCrary, *not as his employe to carry out his special contract, but as the employe of all the defendants.* Galland did nothing in the case, and there was nothing whatever to indicate that he was regarded as an attorney in the case. The circumstances were such that McCrary had a right to assume that he was employed by all the defendants. In the case at bar Dixon, the plaintiff's employer, sustained no relation to the case but attorney. He had done a part of the work when plaintiff was called in. The plaintiff knew that his contract was with Dixon, *who, as an attorney, had already taken and was prosecuting the case.*

The case of *Shelton v. Johnson*, 40 Iowa, 84, relied upon by plaintiff, involves, too, a different principle. One Findley was attending Johnson as a physician, and while so attending him called in the plaintiff, Shelton, as a consulting physician. Johnson claimed that he had agreed with Findley that he should pay Shelton, but Shelton had no knowledge of the agreement, and the court held very properly that Shelton could look to Johnson. Shelton was called in for consultation. He was employed to do, not what Findley had been

previously employed to do, but what Findley could not do, for no person can hold a consultation with himself.

We are of the opinion that the judgment of the Circuit Court must be

REVERSED.